UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JAMES BRAWLEY, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-cv-00308-RWS |
| | ) | |
| ST. LOUIS COUNTY POLICE DEPARTMENT, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff James Brawley for leave to commence this civil action without prepayment of the filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court will grant the motion, and assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint for failure to state a claim.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to

the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a prison account statement in support of his motion to proceed in forma pauperis. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is currently an inmate at the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri. He brings this pro se civil action pursuant to 42 U.S.C. § 1983. His complaint names the St. Louis County Police Department, the St. Louis County 4th Precinct Dog Handler ("Unknown K-9 Officer"), Unknown Palallozzi, Jolieen Taffee, and the Public Media as defendants. The defendants are sued in both their individual and official capacities.

Plaintiff states that in December 2015, a canine "tracked [him] to a dumpster where [he] was hiding under trash." (Docket No. 1 at 3, 8). The St. Louis County Police then opened the dumpster lid and "threw the canine on top of [him]." (Docket No. 1 at 8). According to plaintiff, defendant Unknown K-9 Officer "used his canine as a personal weapon and toy by throwing his tool on top of [him]." (Docket No. 1 at 3). He further asserts that this officer commanded the dog

to bite him repeatedly, allegedly for "amusement and punishment." Plaintiff states that the dog bites caused nerve damage and scarring in his left leg, as well as mental scarring and hospital bills.

As a result of this incident, plaintiff was arrested and ultimately convicted of criminal charges.[1] Plaintiff states that the prosecutor in his case, Unknown Palallozzi, "worked directly" with his defense attorney to convict him. He also alleges that Palallozzi withheld discovery, thereby violating his constitutional rights. He asserts that he was falsely accused, falsely imprisoned, and maliciously prosecuted. (Docket No. 1 at 4). Plaintiff alleges this caused him deprivation of character, mental anguish, and irreparable damages.

During the relevant time period, plaintiff was represented by defense attorney Jolieen Taffee, who he states is in private practice. (Docket No. 1 at 5). He alleges that Taffee robbed him, falsely imprisoned him, sold him out, withheld discovery, and provided ineffective assistance of counsel. (Docket No. 1 at 6). He also claims that Taffee worked with Prosecutor Palallozzi to violate his rights and secure his conviction. He states that Taffee's actions cost him money and caused mental anguish.

Following this incident, plaintiff alleges that the Public Media slandered him. Specifically, he asserts that Channel 2 News, Channel 5 News, and "Behind the Bars" newspaper "assassinated [his] character by calling [him] [a] homeless [piece] of trash and putting a picture of [his] head in a dumpster." He further states that the Public Media put him on "full blast" in the news and newspaper. Based on this media coverage, plaintiff states that he was deprived of his character, slandered, and suffered irreparable injuries.

---

[1] According to records found on Case.net, Missouri's online case management system, plaintiff was charged by amended indictment with first-degree tampering with a motor vehicle, resisting felony arrest, and assault on a police animal. *State of Missouri v. Brawley*, 16SL-CR04946-01 (21st Cir., St. Louis County). He pled guilty on March 2, 2017. He was placed on probation, which was subsequently revoked on January 24, 2019. At that time, his previously-imposed seven-year sentence was executed.

Plaintiff seeks compensation for his hospital bills, legal fees, and mental health problems in the amount of $2,500,000. (Docket No. 1 at 9). He also wants his "criminal charges dismissed or overturned."[2]

**Discussion**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, naming the St. Louis County Police Department, Unknown K-9 Officer, Unknown Palallozzi, Jolieen Taffee, and the Public Media as defendants. For the reasons discussed below, plaintiff's case must be dismissed.

**A. St. Louis County Police Department**

Plaintiff has failed to state a claim against the St. Louis County Police Department, because a police department is not a juridical entity subject to suit. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992). *See also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"). As such, plaintiff's claim against the St. Louis County Police Department must be dismissed. *See De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities).

Even if St. Louis County is substituted as the proper party defendant, plaintiff has still failed to state a claim of municipal liability.

A local governing body such as St. Louis County can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail

---

[2] To the extent that plaintiff is seeking to overturn his conviction and be released, such relief is properly sought via a writ of habeas corpus, not 42 U.S.C. § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (stating that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"). *See also Adams v. Agniel*, 405 F.3d 643, 644-45 (8th Cir. 2005) (explaining that a habeas action is the proper vehicle for a prisoner to challenge the legality of his sentence or seek immediate or speedier release); and *Otey v. Hopkins*, 5 F.3d 1125, 1130 (8th Cir. 1993) (stating that when "a prisoner directly attacks the validity of his sentence, the proper vehicle is a habeas corpus action").

on this type of claim, a plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can potentially prove the liability of St. Louis County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

6

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff has failed to state a claim of municipal liability against St. Louis County. He has pled no facts supporting the proposition that his constitutional rights were violated because of an unconstitutional policy or custom. He has also failed to allege that his constitutional rights were violated due to a failure to train county employees. Thus, even if St. Louis County was substituted as defendant, plaintiff's claim against the county would have to be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of

*Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

   **B. Prosecutor Palallozzi**

Plaintiff's claim against Prosecutor Palallozzi must be dismissed based on prosecutorial immunity from § 1983 suit.

Prosecutors are immune from § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the State in a criminal prosecution. *Id*. On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id*.

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). This immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Id*. Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). *See also Woodsworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018) (stating "that a prosecutor is immune from suit even if he knowingly presented false, misleading, or perjured testimony or withheld or suppressed exculpatory evidence"). Absolute immunity also "covers

actions taken to initiate a prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013).

Here, plaintiff states that Prosecutor Palallozzi maliciously prosecuted him by withholding discovery and working directly with his defense attorney to prosecute him. These allegations encompass actions within the scope of Palallozzi's prosecutorial duties while Palallozzi was acting as an advocate for the state in a criminal proceeding. As such, Palallozzi has absolute immunity from suit. This immunity applies despite plaintiff's allegation of malice and despite his allegation that evidence was suppressed. Because Prosecutor Palallozzi has absolute immunity, plaintiff's claim must be dismissed.

**C. Defense Attorney Taffee**

Plaintiff has failed to state a claim against Defense Attorney Taffee because he has not demonstrated that she was acting under color of state law.

In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Lutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). To that end, only state actors can be held liable under § 1983. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008).

When a private party acts under color of state law, it can be held liable under § 1983. *Crumpley-Patterson*, 388 F.3d at 590. However, a private party may only be held liable "if it is a willful participant in joint activity with the State or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the

9

minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

Here, plaintiff alleges that Defense Attorney Taffee is a lawyer engaged in the private practice of law. He claims that she "worked with [the] prosecutor" to secure his conviction. However, he provides no facts to demonstrate that Defense Attorney Taffee was a willful participant in joint activity with the prosecutor. Indeed, aside from one conclusory statement, plaintiff does not provide any supporting facts at all. The Court is not required to accept unsupported conclusions. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (stating that "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

Moreover, an attorney is not subject to suit under § 1983 when performing the traditional role of defense counsel. *See Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); and *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Public defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel"). Because plaintiff has not alleged that Defense Attorney Taffee acted under color of state law, his § 1983 claim against her must be dismissed.

**D. Public Media**

Plaintiff has failed to state a claim against the Public Media because he has not demonstrated that the media was acting under color of state law. To establish liability under § 1983, a plaintiff must demonstrate that his or her constitutional rights were violated by a person acting under color of state law. *See Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535

(8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law").

Here, plaintiff alleges that Channel 2 News, Channel 5 News, and the "Behind the Bars" newspaper slandered him. There is no indication that any of these private entities acted under color of state law or in concert with the state or its agents. Because plaintiff has not alleged that the Public Media acted under color of state law, his § 1983 claim against it must be dismissed.

### E. Unknown K-9 Officer

Plaintiff's claims against Unknown K-9 Officer, who he describes as the St. Louis County 4th Precinct Dog Handler, must be dismissed.

#### i. Official Capacity Claim

Plaintiff has not stated an official capacity claim against Unknown K-9 Officer. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit

11

against the entity for which the official is an agent"). Since plaintiff is employed by the St. Louis County Police Department, an official capacity claim is actually a claim against St. Louis County.

To prevail on an official capacity claim, plaintiff must establish the governmental entity's liability for the alleged conduct. *See Kelly*, 813 F.3d at 1075. Plaintiff can establish such liability by showing that the alleged violation of his constitutional rights "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *See Mick*, 883 F.3d at 1089. As previously discussed above, plaintiff has failed to allege facts indicating that St. Louis County had an unconstitutional policy or custom, or that it was deliberately indifferent in failing to train or supervise its employees. Therefore, plaintiff's official capacity claim against Unknown K-9 Officer must be dismissed.

### ii. Individual Capacity Claim

Plaintiff's individual capacity claim against Unknown K-9 Officer for excessive force fails to state a claim.

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). *See also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person"); and *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen"). The violation of this right is sufficient to support an action under § 1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018).

The use of a canine to effect an arrest is reviewed under the general Fourth Amendment excessive force standard established in *Graham v. Connor*, 490 U.S. 386, 397 (1989). *Kuha v. City of Minnetonka*, 365 F.3d 590, 598 (8th Cir. 2003), *abrogated on other grounds by Szabla*, 486 F.3d at 391-92. To that end, "[a] constitutional problem may arise based on *the manner* in which canines are used." *Szabla*, 486 F.3d at 391 (emphasis is original) (explaining that "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender").

Plaintiff's allegations are insufficient to state a claim of excessive force under the Fourth Amendment. He states that while being pursued by the police, he climbed into a dumpster and hid under the trash. A police K-9 unit tracked him to the dumpster, where the door was opened and, according to plaintiff, the dog was placed inside. He alleges that the dog was ordered to bite him "repeatedly for amusement and punishment."

Plaintiff does not allege that he was not the suspect who was being tracked; indeed, he acknowledges hiding from the police. He also does not allege that police failed to issue a warning that a police dog was being used. Furthermore, there is no indication that plaintiff complied with directions to give himself up or assented to arrest. Instead, his own facts establish that he was

attempting to avoid arrest by hiding beneath trash located in a dumpster. Without any supporting facts, plaintiff's claim that the dog was ordered to bite him for "amusement and punishment," rather than to hold him in place, amounts to a conclusion. That is, plaintiff's facts do not demonstrate that the use of the police dog to apprehend him, after he fled from police, was an unreasonable application of force. *See Burnikel*, 886 F.3d at 710 (stating that factors relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"). Therefore, plaintiff's individual capacity claim against Unknown K-9 Officer must be dismissed.

F. **Motion to Appoint Counsel**

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). The motion will be denied as moot as plaintiff's case is being dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (Docket No. 3) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 21st day of June, 2019.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE